CV22-15090
Filed for Record
12/27/2022 1:51 PM
Newton County District Clerk , TX
By: Jessica Adaway

CV22-15090

CAUSE NO._____

| | | |
|---|---|---|
| ROSEWOOD ASSISTED LIVING CENTER INC. | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| v. | § § | _____JUDICIAL DISTRICT |
| MOUNT VERNON FIRE INSURANCE COMPANY | § § § | |
| *Defendant.* | § § | NEWTON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

NOW come ROSEWOOD ASSISTED LIVING CENTER INC. ("Plaintiff"), who files Plaintiff's Original Petition against MOUNT VERNON FIRE INSURANCE COMPANY ("Defendant") and in support thereof, would show as follows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

1)    Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II.
### PARTIES & SERVICE

1

2)      Plaintiff is the named insured under a policy issued by the Defendant, Mount Vernon Fire Insurance Company.  Plaintiff has a place of business, and the insured building is located, in Newton County, Texas.

3)      Defendant, Mount Vernon Fire Insurance Company is an insurance company that engages in the business of insurance in Texas. The insurance business done by Defendant includes, but is not limited to, the following: taking and receiving applications for insurance; receiving and collecting premiums; adjusting claims and sometimes paying claims, and issuing insurance policies to consumers of this state, including Plaintiff. Defendant, Mount Vernon Fire Insurance Company is represented by Mr. Daniel Buechler, Esq., 700 North Pearl Street, 25th Floor, Dallas, TX 75201. Mr. Buechler has represented that he is an authorized representative available to accept service via email at DBuechler@thompsoncoe.com, and he will therefore be served by private process.

### III.
### JURISDICTION & VENUE

4)      This is a civil matter in which the amount in controversy is more than five hundred dollars ($500.00), exclusive of interest.  Jurisdiction is thus proper in a District Court of Newton County, Texas, and it is also proper pursuant to Art. V, Sec. 8 of the Texas Constitution.

5)      Venue is appropriate in Newton County, Texas because all or part of the conduct giving rise to the causes of action were committed in Newton County, Texas and the property

2

which is the subject of this suit is located in Newton County, Texas. Accordingly, venue is proper

pursuant to Texas Civil Practice & Remedies Code §15.002.

### IV.
### FACTS

6)      Plaintiff, Rosewood Assisting Living Center, Inc. has a policy with Mount Vernon

Insurance Company ("Defendant") bearing policy number CF2561450A ("Policy"). The Policy

insures the Plaintiff's buildings located at 1010 S. Texas 87, Newton, Texas 75966 ("Property").

Building 4-1 is insured on a replacement cost basis and Buildings 5-1 and 6-1 are insured on an

actual cash value basis. Additionally, Buildings 4-1 and 6-1 have a $2,500.00 deductible, and

Building 5-1 has a $17,650.00 deductible. Since Building 5-1 is not insured on a replacement cost

basis, there is no coverage for Code Upgrade.

7)      In 2020, Hurricane Laura struck Newton County, and caused extreme damage to

the Property. Plaintiff made a claim for hurricane damage to its property shortly after it occurred.

Defendant was acutely aware that this property was an assisted living center and Plaintiff's main

source of income. It was also aware that the roof was terribly damaged, and the interior was

suffering as a result.

8)      Before, during, and after the initial claim determination, Defendant and its adjusters

were repeatedly provided with unbiased and objective evidence of the wind speeds, damages, and

necessary repairs—first by Plaintiff's roofer and then again by Plaintiff's public adjuster.

Altogether, Plaintiff presented an estimate of damage that was $655,119.86 RCV and

3

$645,835.27 ACV. Plaintiff also presented weather reports and physical evidence of the damage. Plaintiff asked that coverage and limitations be applied and payments made. This information continuously went ignored, however.

9)      When Defendant first investigated the claim, it sought to belittle the amount of damage. Defendant did so by sending out an engineer from ProNet Group, Inc., who is an engineering firm that solely works for insurance companies. ProNet knows what the insurance company expects out of it, and it knows what to say and how to say it. To belittle the damage, the engineer used faulty wind data that was objectively false, and the data under-appreciated the true extent of the wind's forces during the hurricane. While the engineer could not ignore the obvious wind damage to the roofing surfaces, he sought to describe them as minor and "cosmetic," which triggers limitations in the Policy. He also sought to blame the obvious wind effects on causes that he and Defendant both knew would trigger exclusions under the policy. This was false, as the roofs were no longer able to function as a barrier to the elements and the wind effects were obvious. Defendant nevertheless knowingly ran with these mischaracterizations.

10)      As Plaintiff's representatives continued to press Defendant on the where the water was coming from, Defendant then hired a building consultant. After inspecting, the Consultant flat out admitted additional investigations should be done on Defendant's part to inspect certain areas for damage. The additional investigation of these particular areas did not occur. Instead, ProNet was sent back out, who refused to investigate the various areas of concern, and he

4

continued to belittle the source of water intrusion and damage to the roofs. All in, roughly $16,000.00 was paid to the Plaintiff after subtracting the deductibles. As is demonstrated below, this is woefully short of the actual covered damages.

11)     To this day, it is still unclear what the actual claim determination was. Defendant repeatedly failed to send any explanation for its claim decision and denial, and it is apparent that Defendant never sent one in the first place.  This is a blatant violation of Defendant's duties under Texas law.  As best as Plaintiff can tell, Defendant merely relied on an engineering report that was obviously faulty, and wrongfully withheld funds that should have been paid.

12)     Plaintiff then hired the undersigned.  Plaintiff tried at first to avoid litigation of this matter. To do so, it invoked the appraisal process.  The appraisal clause dictates as follows:

---

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

---

13)    Both parties named their respective appraisers, who in turn selected an umpire. As it would turn out, they did not need an umpire. The damage was obvious to them both. The two appraisers confirmed there were storm created openings to the roofs, all the roofs needed to be replaced, and there was extensive damage to the interior.

14)    The two appraisers signed an appraisal award for $652,262.60 RCV and $602,191.74 ACV. This award is not-so-surprisingly close to the public adjuster's estimate, which was $655,119.86 RCV and $645,835.27 ACV. Here is a snapshot from the award:

| COVERAGE | RCV | DEP | ACV |
|---|---|---|---|
| Building 4-1 | $73,200.93 | $4,239.87 | $68,961.06 |
| Buildling 5-1 | $401,467.91 | $37,819.36 | $363,648.55 |
| Building 5-1 Code Upgrade | $132,498.85 | $0.00 | $132,498.85 |
| Building 6-1 | $45,094.91 | $8,011.63 | $37,083.28 |
| **TOTAL** | **$652,262.60** | **$50,070.86** | **$602,191.74** |

15)    The severity of the damage is consistent with what the claim investigation revealed, and what was ignored by Defendant. For example, Plaintiff's roofer reported to Defendant and its representatives that there were large scratches and scars in the TPO roofing, metal panels were detached from their purlins, dents were observed all over various surfaces, large oaks were uprooted and mangled, and the interior suffered from extreme water damage. Plaintiff's roofer and public adjuster both demonstrated the obvious wind damage, the necessity of replacing the roofs, and the need to address the interior water damage.    This information was ignored.

16)    The damage is also consistent with local media reports and the corresponding

6

weather data, which indicate the western wall of the hurricane passed right over Newton. According to NOAA's Storm Event Database, wind gusts ranged from 70 to 110 mph across the county. This information was also ignored.

17)    Altogether, this was a covered loss, and Defendant was and remains liable for these damages less any limitations or exclusions in the Policy.  Plaintiff then sent a statutory letter pursuant to Section 542A.003(b)(2) of the Texas Insurance Code.  This letter was specifically sent to avoid litigation by making the necessary demand on Defendant.

18)    First, Plaintiff acknowledged the $132,498.85 appraised for Code Upgrade is not covered damage to Building 5-1. Second, Plaintiff acknowledged that the depreciation is not recoverable on Buildings 5-1 and 6-1.  Third, Plaintiff acknowledged the proper deductibles for each building, and last Plaintiff acknowledged that the net amounts should be offset by $14,319.47 and $2,324.55 for the amounts already paid on buildings 4-1 and 6-1 respectively. Altogether, Plaintiff put Defendant on notice that the specific amount owed for damage to or loss of covered property (at the time and based on the policy alone) was **$430,398.87**.

19)    Plaintiff also apprised Defendant of the consequential damages Plaintiff sustained. Namely, when Defendant failed to pay Plaintiff, the assisted living center was unable to make the hundreds of thousands of dollars it needed safely house its patrons. It was forced to close, and it has not made any money whatsoever since the passing of the hurricane.  Meanwhile, it is unable to safely insure the premises given its current condition, and what little insurance it could get was

7

astronomically more in premiums. At the time of the letter, Plaintiff had suffered $200,625.00 in lost income, and it had to pay an additional $7,667.00 more in premiums. That is to say, Defendant's delay, failure to equitably settle this claim, and breach of the agreement caused an independent injury and/or consequential damages of at least $208,292.00. These damages continue to accrue despite Plaintiff's best efforts to mitigate the same.

20)    All of this was made known to Defendant, but Defendant refused to pay the amount owed. In fact, Defendant refused to pay any amounts above and beyond the initial claim determination, and instead continues to rely on a faulty engineering opinion. What this essentially boils down to is an insurance company that does not want to pay the amounts it owes. This litigation is what ensued despite Plaintiff's best attempts to avoid it.

## V.
### CAUSES OF ACTION

1)    All conditions precedent to this action have occurred, been fulfilled, or have otherwise been waived or discharged.

### A.  *Breach of Contract against Defendant*

2)    Defendant's conduct constitutes a breach of the insurance contract between it and Plaintiff. It is undisputed that a contract existed between Plaintiff and Defendant in the form of the Policies. It is also undisputed that Plaintiff paid premiums, substantially complied with all terms of the Policies, and held up their end of the bargain. Defendant on the other hand did not hold up its end of the bargain.

8

3)      The Policies obligate Defendant to pay for all covered losses. When a claim was presented, Defendant failed to provide coverage thereby breaching the Policy agreements. When an appraisal award was rendered, it was not paid, nor was it disputed.

4)      Plaintiff sustained damages as a result of Defendant's breach of the Policy. Such losses were the natural, probable, and foreseeable consequence of the Defendant's conduct. Plaintiff seeks their damages together with pre-judgment interest and reasonable and necessary attorneys' fees.

### B.    *Noncompliance with the Texas Insurance Code*

5)      As described above, Defendant's conduct and the conduct of their agents constitutes multiple violations of the Texas Insurance Code that have been legislatively determined to be Unfair Method of Competition, an Unfair Settlement Practice, and/or otherwise in violation of the Texas Insurance Code. Section 541.151 and Section 542.060 of the Texas Insurance Code makes these violations actionable.

6)      Due to the relationship (and/or their engagement in the business of insurance) between Plaintiff, Defendant, and their agents (who makes Defendant's liable on a respondeat superior and agency theory) there are numerous obligations owed to Plaintiff under the Texas Insurance Code. Chief among these duties, these persons were obligated to (in whole and in part):

1.      To not misrepresent material facts relating to coverage at issue (§ 541.060(a)(1));

2.      To attempt in good faith to effectuate a prompt, fair, and equitable settlement a claim in which the insurer's liability has become reasonably clear (§ 541.060(a)(2));

9

3.    To promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim (§ 541.060(a)(3))

4.    To affirm or deny coverage within a reasonable amount of time (§ 541.060(a)(4));

5.    To not refuse to pay a claim without conducting a reasonable investigation with respect to the claim (§ 541.060(a)(7));

6.    To not make an untrue statement of material fact (§ 541.061(1));

7.    To acknowledge receipt of the claim, commence an investigation, and request all § 542.055(a)(3) items within 30 business days (§ 542.055(a));

8.    To notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss (§ 542.056(a)); and

9.    To not delay payment of a claim after receiving all items, statements, and forms reasonably requested and required under Section 542.055 for a period of more than 60 days (§ 542.058(a)).

7)    The Defendant failed to fulfill these duties. The Defendant failed to fulfill these duties. Briefly speaking, and as supported above, a written claim was undoubtedly made under the policy, Defendant were and continue to be liable for that claim, Defendant should have provided coverage for the claim, Defendant instead wrongfully withheld policy benefits and along the way violated the Texas Insurance Code as this petition describes, and that has caused and resulted in actual damages to Plaintiff. Defendant's wrongful withholding of policy benefits was made possible by the actions and inactions of its agents, all of which were in violation of the Texas Insurance Code.

10

8)     Plaintiff seeks to recover actual damages, and the applicable interest under the Texas Insurance Code, together with reasonable and necessary attorney's fees.  Plaintiff also seeks pre-judgment interest.

## C.    *Breach of the Duty of Good Faith and Fair Dealing*

9)     Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing it owes to the Plaintiff.

10)     In the insurance context, a special relationship arises because of the parties' unequal bargaining power and the nature of insurance contracts, which would allow unscrupulous Defendant to take advantage of the Plaintiff's misfortunes in bargaining for settlement or resolution of claims. An insurance company has exclusive control over the evaluation, processing, and denial of claims, and without this duty Defendant could arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed.

11)     For these reasons, a duty exists.  Plaintiff contends Defendant breached its duty of good faith and fair dealing:

      a.  Because there was no reasonable basis for Defendant to deny the claim;

      b.  Because there was no reasonable basis for Defendant to delay the claim;

      c.  Because Defendant failed to determine whether there was any reasonable basis to deny and delay the claim;

      d.  Because Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim even though its liability was reasonably clear; and

      e. Because Defendant refused to pay a claim without conducting a reasonable investigation of the claim.

12)    Defendant's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

13)    Defendant's breach of the duty of good faith and fair dealing has proximately caused damages for the Plaintiff.

## VI.
### KNOWLEDGE

14)    The Defendant did each of the acts described above, "knowingly" as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

## VII.
### DAMAGES

15)    Plaintiff intends to show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff. Plaintiff contends the damages were the natural, probable, and foreseeable consequence of Defendant's breach of the policy. Plaintiff contends that Defendant's violations of the duty of good faith and fair dealing were the proximate cause of the damages. Lastly, Plaintiff also contends Defendant's actions and its agents' actions in violation of the Texas Insurance Code were

12

the producing cause of its damages. These damages are a direct result of the mishandling of Plaintiff's claim in violation of the laws set forth above.

16)    For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with reasonable and necessary attorney's fees. In the alternative, Plaintiff is entitled to their pecuniary loss.

17)    For noncompliance with the Texas Insurance Code, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, or could be the benefits as actual damages under the Texas Insurance Code due to Defendant's statutory violation that caused Plaintiff to lose its contractual rights to benefits. In any event, the damages should at least be Plaintiff's pecuniary loss and all court costs, and reasonable and necessary attorney's fees. For knowing conduct of the acts described above, Plaintiff seeks three times the actual damages. Tex. Ins. Code §541.152.

18)    For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of its claim, as well as the applicable interest per annum on the amount of such claim as damages, together with reasonable and necessary attorney's fees. Tex. Ins. Code §542.060.

19)    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to exemplary damages. Defendant has actual awareness of its liability under the policy, but is choosing to ignore that liability, deny the claim, and delay the claim. This warrants the imposition

13

of exemplary damages.

20)     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Proper notice of the claim has been sent to the relevant parties. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the appropriate appellate bodies.

## VII.

21)     As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $1,000,000.00. A jury, however, will ultimately determine the amount of monetary relief actually awarded. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff request that Defendant be cited to appear and answer herein; that, on final hearing, Plaintiff has judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court; for costs of suit; for interest on the judgment as allowed by the applicable statute; for pre-judgment interest; and, for such other and further relief, in law or in equity, either general or special against Defendant, to which Plaintiff may be justly entitled.

14

Respectfully submitted,

CROWELL & KUCERA, PLLC
2028 E. Ben White Blvd. Ste. 240-2015
Austin, TX 78741
Telephone:       (512) 870-7099
Facsimile:       (512) 388-9520


BY: **/s/ *Brennan M. Kucera***
        BRENNAN M. KUCERA
        State Bar No. 24076491
        brennan@ck-firm.com
        BENJAMIN R. CROWELL III
        State Bar No. 24087360
        ben@ck-firm.com

ATTORNEYS FOR PLAINTIFF

15